UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HECTOR MUNOZ ZULETA,

                    Plaintiff,

    v.

J. KROM, *Deputy Superintendent of Administration*; P. PAGE-CANNONIER, *Acting Nurse Admin.*; *and* DR. M. GUSMAN, *as employees of the Department of Corrections and Community Supervision in their individual and official capacities*,

                    Defendants.

No. 24-CV-2363 (KMK)

ORDER & OPINION

---

Appearances:

Hector Munoz Zuleta
Woodborne, NY
*Pro Se Plaintiff*

Maurice Nwikpo-Oppong, Esq.
NYS Office of The Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Hector Munoz Zuleta ("Plaintiff"), proceeding pro se, brings this Action against J. Krom ("Krom"), P. Page-Cannonier ("Page-Cannonier"), and Dr. M. Gusman ("Gusman") (collectively, "Defendants") and seeks damages for "deliberate indifference, Medical

Malpractice and Misconduct" pursuant to 42 U.S.C. §§ 1983 & 1988. (*See* Compl. ¶¶ 1–2.)[1] Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion"). (*See* Not of Mot. (Dkt. No. 21).) For the following reasons, Defendants' Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiff's Complaint, as well as materials attached thereto, and are assumed to be true for the purposes of ruling on the instant Motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

Plaintiff is an incarcerated individual residing at Sullivan Correctional Facility ("SCF") in Fallsburg, New York. (*See* Compl. ¶ 6.) In or about March 2021, Plaintiff began suffering "pain from an ingrownal Hernia! [sic] and commenced attempting to seek and obtain medical care/assistance, Per: (DOCC's) sickcall-slip procedure." (*Id.* ¶ 14.) Plaintiff was subsequently seen by SCF's medical staff and diagnosed with an inguinal hernia. (*See id.* ¶ 6.) The medical staff gave Plaintiff a medical memorandum that limited him from lifting "more than [5] lbs" from April 14, 2021, to June 14, 2021. (*Id.* ¶ 14.)

Plaintiff claims that his subsequent medical care was delayed because it was "ignored," "the result of interferences with prescribed treatment," or intentionally denied. (*Id.*) During the alleged delay, Plaintiff made "every attempt to obtain relief . . . as required by the Prisoner's [L]itigation Reform Act," (*see id.* ¶ 7), including numerous "complaints, sickcall-slips, letters, and grievances," (*id.* ¶ 14). In response, on October 14, 2022, Carol A. Moores, the Chief

---

[1] Unless otherwise noted, as here, the Court cites to the ECF-stamped page number in the upper-right corner of each page.

Medical Officer at SCF, wrote a letter to Plaintiff stating that "[t]he Division of Health Services has investigated [his] concerns with the Health Services staff at Sullivan Correctional Facility." (*Id.* at 10 (Ex. B).) The letter states that Plaintiff was evaluated by a general surgeon on May 4, 2022, and that as of October 14, 2022, he was "awaiting scheduling to have hernia repair surgery completed." (*See id.*)

A few months later, on February 10, 2023, Vernon Baldwin, the Regional Health Services Administrator at SCF, wrote to Plaintiff that "every effort [wa]s being made to schedule [his] surgery" which would be "scheduled according to the provider's availability." (*Id.* at 9 (Ex. B.).) Soon after, on February 16, 2023, Krom wrote a letter to Plaintiff indicating that "a referral was made and approved to address [his] complaint" and that "[o]nce scheduled by Central Office scheduler [Plaintiff] will receive procedure." (*Id.* at 11 (Ex. B).)

On March 11, 2023, Plaintiff's hernia ruptured, and he was "removed from his cell and escorted to the infirmary . . . due to the pain and suffering . . . ." (*Id.* ¶ 14). On May 12, 2023, when the condition became "life threatening," (*id.* ¶ 7), Plaintiff was "rushed" to a hospital for hernia repair surgery, (*id.* ¶ 14).

Plaintiff contends that the "malfeasances of the[] defendants" caused "a prime facie deliberate indifference, pain, suffering and risk of life." (*Id.*) Specifically, Plaintiff claims that Defendants "failed to timely take action [and] allow[ed] [him] to go on in pain and suffering for an extended delay in scheduling hernia surgery." (*Id.* ¶ 7.) This "intentional denial of, or the

delay in access to medical care" allegedly caused Plaintiff "unnecessary and wanton infliction of pain." (*Id.* ¶ 14.) Plaintiff now seeks $20 million in compensatory damages. (*Id.* ¶ 15.)

B. Procedural Background

Plaintiff filed his Complaint on March 22, 2024. (*See generally* Compl.) On May 30, Defendants filed a letter requesting leave to file a Motion to Dismiss the Complaint, (*see generally* Letter Mot. for Conference (Dkt. No. 14)), which the Court granted, (*see generally* Dkt. No. 15). Pursuant to the Court-ordered briefing schedule, Defendants filed the current Motion to Dismiss on October 4, 2024. (*See* Dkt. No. 15; Not. of Mot.; Defs' Mem. in Supp. of Mot. ("Defs' Mem.") (Dkt. No. 22).) Because Plaintiff did not file an opposition nor seek an extension to do so, the Court deemed the Motion fully submitted on January 30, 2025. (*See* Memo Endorsement (Dkt. No. 24).)

The following month, Plaintiff sought additional time to file his Opposition. (*See* Feb. 25, 2025 Letter from Pl. 2 (Dkt. No. 25).) The Court granted Plaintiff a thirty-day extension, until April 4, 2025, to oppose the Motion. (*See* Dkt. No. 26). After Plaintiff failed to file an Opposition by the extended deadline, Defendants again requested that the Motion be fully submitted. (*See* Dkt. No. 27.) The Court granted Defendants' request on April 27, 2025. (*See* Dkt. No. 28.)

On May 8, 2025, Plaintiff requested another extension, asking that the Court excuse his delay on account of, inter alia, an "illegal strike by corrections officers and the effect this has had on facility operations." (*See* May 8, 2025 Letter From Pl. 1 (Dkt. No. 29).) The Court granted Plaintiff a final extension until May 27, 2025, to oppose the Motion. (*See* Dkt. No. 30.) After Plaintiff again failed to do so, the Court deemed the Motion fully submitted. (*See* Dkt. Nos. 31– 32.)

II. Discussion

A. Standard of Review

"The standards of review under Rules 12(b)(1) and 12(b)(6) . . . are substantively identical." *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, 2020 WL 3618969, at *3 (S.D.N.Y. July 2, 2020) (quoting *Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014)). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.* (quoting *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014)).

1. Rule 12(b)(1)

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." *Biener v. Credit Control Servs., Inc.*, No. 21-CV-2809, 2023 WL 2504733, at *3 (S.D.N.Y. Mar. 14, 2023) (alteration in original) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)); *see also Wells Fargo Bank v. 5615 N. LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (quoting *Lyndonville*, 211 F.3d at 700–01). "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citing *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir.2008), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir.2009) (quotation marks omitted)). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank*

5

*Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted)), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as a "threshold question" (citation omitted)).

    2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted, quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in

original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents . . . of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Moreover, where, as here, a plaintiff proceeds pro se, the court must "construe[ ] [the plaintiff's] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from

7

compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B.  Analysis

Plaintiff asserts a single claim under § 1983 for deliberate indifference, in violation of the Eighth Amendment.  (Compl. ¶¶ 1, 13.)  Defendants argue that the Complaint must be dismissed because: (1) pursuant to Rule 12(b)(1), the Court lacks subject matter jurisdiction, (Defs' Mem. 17); (2) pursuant to Rule 12(b)(6), Plaintiff fails to state a claim for deliberate indifference, (*id.* at 9–11); and (3) Plaintiff does not allege that any Defendant was personally involved, (*id.* at 11–14).  The Court will address these arguments only as necessary to resolve the Motion.

1.  Eleventh Amendment Immunity

Defendants argue that Plaintiff's § 1983 claim against Defendants in their official capacities must be dismissed because it is barred by the Eleventh Amendment.  (*Id.* at 17.)  The Court agrees.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration adopted and quotation marks omitted).  New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983.  *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977); *Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1

(S.D.N.Y. Aug. 13, 2021) (same). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F. 3d at 366 (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). The Eleventh Amendment therefore also bars the claim for damages against the individual Defendants in their official capacities. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state" (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)); *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 436 (S.D.N.Y. 2017); *Perciballi v. New York*, No. 09-CV-6933, 2010 WL 3958731, at *4 (S.D.N.Y. Sept. 28, 2010) (quoting *Ying Jing Gan*, 996 F.2d at 529).

Plaintiff's claim against Defendants in their official capacities is therefore dismissed. *See ! Akinlawon v. Polonco*, No. 21-CV-2621, 2025 WL 887621, at *9 (S.D.N.Y. Mar. 21, 2025) (dismissing claims for damages asserted against individual correctional employees because they were entitled to Eleventh Amendment immunity); *Samuels v. N.Y. Dep't of Lab.*, No. 23-CV-8004, 2025 WL 27737, at *4 (S.D.N.Y. Jan. 3, 2025) (same); *Colon v. Gunsett*, No. 22-CV-635, 2023 WL 2139790, at *3 (S.D.N.Y. Feb. 21, 2023) (same). The Court will further address below Plaintiff's claim against Defendants in their individual capacities.

    2. Deliberate Indifference

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. That broad proscription extends to a prison official's "deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Zeigler*

*v. Annucci*, No. 23-CV-707, 2024 WL 4252682, at *6 (S.D.N.Y. Sept. 20, 2024) (quoting the same).

"The standard of deliberate indifference includes both subjective and objective components." *Mallet v. New York State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 132 (2d Cir. 2025). As for the subjective requirement, "the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. This means that the defendant must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Mallet*, 126 F.4th at 132 (noting that the "acts or omissions" of the defendant must "evince a conscious disregard of a substantial risk of serious harm" (alteration adopted and quotation marks omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation, footnote, and quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Id.* (citation and quotation marks omitted). "[A] delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Price v. Koenigsmann*, No. 19-CV-4068, 2022 WL 125818, at *7 (S.D.N.Y. Jan. 13, 2022); *see also Pabon v. Wright*, No. 99-CV-2196, 2004 WL 628784, at *8 (S.D.N.Y. Mar. 29, 2004), *aff'd*, 459 F.3d 241 (2d Cir. 2006). However, "mere negligence" is insufficient to state a

claim for deliberate indifference. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation and quotation marks omitted).

As for the objective prong, "the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30 (citation and quotation marks omitted).

### a. Objective Prong

Beginning with the objective prong, "[i]n general, a 'sufficiently serious' medical need is a 'condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Hall v. Dep't of Corr. Med. Dep't*, No. 18-CV-6892, 2021 WL 2894646, at *5 (S.D.N.Y. July 8, 2021) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). When the alleged inadequate medical treatment "is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition alone* in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Taylor v. Small*, No. 22-CV-2762, 2024 WL 1605066, at *6 (S.D.N.Y. Apr. 11, 2024) (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)) (emphases in original). Importantly here, "[t]he Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain." *Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 541 (S.D.N.Y. 2015) (quoting *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir. 1977)).

Here, Plaintiff alleges that Defendants' delay in treating his hernia "allow[ed] [him] to go on in pain and suffering for an extended delay in scheduling hernia surgery," which caused him "unnecessary and wanton infliction of pain." (Compl. ¶¶ 7, 14.) Moreover, he alleges that he did not receive treatment until the hernia ruptured, creating a "life threatening" condition and necessitating emergency surgery. (*See id.*) The Court finds these allegations are sufficient to meet the objective component of the deliberate indifference standard. *See Solek v. Wallace*, No. 20-CV-01600, 2021 WL 2186431, at *8 (D. Conn. May 28, 2021) (finding allegations that a plaintiff's "umbilical hernia caused him to experience chronic pain and that the pain worsened during the year before he underwent a surgical procedure to correct the condition" satisfied the objective prong and collecting cases); *Harnage v. Lightner*, No. 17-CV-263, 2019 WL 319395, at *4 (D. Conn. Jan. 24, 2019) (assuming, on a motion for summary judgment, "that the plaintiff's hernia constitutes a serious medical need" where "[c]learly the delay in treatment worsened the plaintiff's condition"); *Jenkins v. Trachtman*, No. 17-CV-0126, 2017 WL 7163935, at *3 (N.D.N.Y. Dec. 22, 2017) (noting that "[w]hile not every hernia rises to the level of a serious medical need, courts distinguish hernias that require surgery and cause pain" and collecting cases), *report and recommendation adopted*, 2018 WL 626303 (Jan. 30, 2018); *Kucharczyk*, 95 F. Supp. 3d at 540–42 (gathering authority and concluding that allegations a plaintiff was delayed hernia repair surgery for five months were sufficient "to suggest that [the p]laintiff was actually deprived of adequate medical care" and that the inadequacy was sufficiently serious (quotation marks omitted)).[2]

---

[2] Notably, Defendants do not contest that "Plaintiff's allegations that he suffered from a painful hernia that eventually required surgical repair" are sufficiently serious for Eighth Amendment purposes. (*See* Defs' Mem. 10.)

12

### b. Subjective Prong

As for the subjective prong, Defendants argue that Plaintiff offered "no factual allegations to show that any Defendant was deliberately indifferent to Plaintiff's serious medical condition." (*See* Defs' Mem. 10.) The Court disagrees.

It is well established that "denying or delaying needed treatment for a serious medical condition" may amount to deliberate indifference if, for example, an "official[ ] delayed care as a form of punishment . . . or delayed major surgery." *Myrie v. Calvo*, 615 F. Supp. 2d 246, 248 (S.D.N.Y. 2009); *see also Feliz v. City of New York*, No. 18-CV-5023, 2019 WL 6831552, at *6 (S.D.N.Y. Aug. 5, 2019) (identifying cases where delays in treatment satisfied the subjective element of a deliberate indifference claim) (citing *Lloyd v. Lee*, 570 F. Supp. 2d 556, 569 (S.D.N.Y. 2008)), *report and recommendation adopted*, No. 18-CV-5023, 2019 WL 4386017 at *5 (S.D.N.Y. Sept. 13, 2019). "If surgery was medically necessary," allegations of delayed surgery may "support the claim that it was deliberate indifference towards [the plaintiff's] medical needs, rather than an exercise of professional judgment to decide that [the plaintiff] could wait . . . for his surgery." *Kucharczyk*, 95 F. Supp. 3d at 542 (quotation marks omitted) (citing *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974) and *Colon v. County of Nassau*, No. 12-CV-4466, 2014 WL 4904692, at *6 (E.D.N.Y. Sept. 26, 2014)).

Here, Plaintiff alleges that he developed a painful hernia on March 2021 and, on April 14, 2021, was placed on a medical limitation for two months to avoid lifting more than five pounds. (Compl. ¶ 14; *id.* at 8 (Ex. A) (Apr. 14, 2021 Medical Limitations Memo).) On May 4, 2022, over a year later and after "[n]umerous complaints, sickcall-slips, letters and grievances[,]" Plaintiff was "evaluated by the general surgeon" for hernia repair surgery. (*See id.* at 10 (Ex. B) (Oct. 14, 2022 Ltr. to Plaintiff from C. Moores; *see also id.* ¶¶ 7, 14.) Over five months later,

Plaintiff was still "awaiting scheduling" for that surgery. (*Id.* at 10 (Ex. B) (Oct. 14, 2022 Ltr. to Plaintiff from C. Moores).) Four months after that, Plaintiff was again notified that he did not have a surgery date scheduled. (*Id.* at 9 (Ex. B) (Feb. 10, 2023 Ltr. to Plaintiff from V. Baldwin); *id.* at 11 (Ex. B) (Feb. 16, 2023 Ltr. to Plaintiff from J. Krom).) The following month, on March 11, 2023, "Plaintiff had to be removed from his cell and escorted to the infirmary . . . due to the pain and suffering" from his hernia rupturing. (*Id.* ¶ 14.) And finally, after two additional months passed, Plaintiff was "rushed to an [o]utside hospital" on May 12, 2023, for surgery—over two years after Plaintiff first developed the hernia. (*See id.*) These allegations are sufficient to suggest Defendants' deliberate indifference to Plaintiff's serious medical need. *See Barnes v. Uzu*, No. 20-CV-5885, 2020 WL 6083365, at *3 (S.D.N.Y. Oct. 14, 2020) (granting leave to amend complaint asserting a deliberate indifference claim where allegations that the plaintiff suffered an "injured Achilles tendon" and that "medical staff denied his repeated request for an MRI for two months, although he was in constant pain, may suggest more than negligence"); *Kucharczyk*, 95 F. Supp. at 542 (holding the plaintiff stated a deliberate indifference claim where the defendant told him that "the surgery was not going to happen because [the plaintiff's] injuries were not life threatening, and he would therefore have to wait to receive surgery until he was transferred or . . . released"); *Adams v. Beaudouin*, No. 09-CV-2136, 2011 WL 240714, at *1, 7–8 (E.D.N.Y. Jan. 24, 2011) (denying motion for summary judgment based, in part, on delay of hernia surgery); *Lloyd*, 570 F. Supp. 2d at 569 (denying motion to dismiss where doctors "knew that [the plaintiff] was experiencing extreme pain and loss of mobility," but "[n]ine months went by after [an] MRI was first requested before the MRI was actually taken," resulting in the plaintiff experiencing ongoing pain for over a year); *see also Hemmings v. Gorczyk*, 134 F.3d 104, 108–09 (2d Cir. 1998) (holding the plaintiff stated a

deliberate indifference claim in which the complaint alleged, inter alia, that medical personnel willfully ignored an "easily observable" ruptured Achilles tendon about which the plaintiff "complained about for almost two months before being referred to a specialist").

Defendants' arguments to the contrary are unavailing. First, Defendants argue Plaintiff did not allege that "any Defendant . . . knew of and disregarded Plaintiff's serious medical condition," (*see* Defs' Mem. 11), and similarly, did not "allege any facts showing that any Defendant was personally involved in any alleged Eighth Amendment violation," (*see id.* at 11–13). The Court disagrees.

Plaintiff specifically alleges that: Krom "was made aware of [Plaintiff's] serious medical need," "reviewed the situation," and then "allowed the delay in care to proceed," (*id.* ¶ 10); Page-Cannonier was "very much aware of [Plaintiff's] [c]omplaint[s] and [g]rievances" and was aware that "Plaintiff suffered from a [h]ernia for an extended delay/period of time and failed to act," (*id.* ¶ 11); and that Gusman—the "main Health care provider/Officer[] at Sullivan"—was "[c]harged with Plaintiff's [h]ealth [c]are," "allowed this deliberate[d] indifference to a serious [m]edical need," and allowed Plaintiff's hernia surgery to "be delayed for an excessive time, causing pain [and] suffering," (*id.* ¶ 12). Moreover, Plaintiff attaches to his Complaint a February 2023 letter from Krom—written over four months after Plaintiff was referred for surgery—wherein Krom acknowledges Plaintiff's "correspondence regarding [his] Surgery," notes that Plaintiff was awaiting scheduling for the procedure and advises Plaintiff "to address [his] medical issues via established sick call procedures." (*See id*. at 11 (Ex. B).) Page-Cannonier is also copied on this letter. (*Id.*) Construing these allegations liberally, the Court concludes Plaintiff has adequately alleged that Krom, Page-Cannonier, and Gusman were personally aware of Plaintiff's serious medical condition and failed to address it. *See Rodriguez*

*v. Dwyer*, No. 23-CV-1258, 2024 WL 5168367, at *9–10 (D. Conn. Dec. 19, 2024) (noting the plaintiff's "allegations are thin, but sufficient for pleading purposes to suggest continuing deliberate indifference by [the defendant provider] to [the plaintiff's] need for medical attention" where the plaintiff alleged he "submitted requests for medical treatment due to intolerable backpain and ineffective medication" but did not receive treatment); *see also Paul v. Bailey*, No. 09-CV-5784, 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013) ("[H]olding the pro se [p]laintiff to a lower pleading standard, [the plaintiff] has alleged facts that create a plausible inference that [the non-medical defendants] demonstrated deliberate indifference to Plaintiff's medical condition.").

Defendants next argue that Krom cannot be held liable as his only personal involvement was "receiving a letter from an inmate." (*See* Defs' Mem. 12.) But, as noted above, Plaintiff alleges that Krom knew of his condition apart from merely receiving a letter, (*see* Compl. ¶ 10 (alleging Krom was "made aware of [Plaintiff's] serious medical need," "reviewed the situation," and then "allowed the delay in care to proceed")), and, moreover, "at the pleading stage," Plaintiff is "entitled to have the court draw the reasonable inference . . . that [Krom] in fact received the Letter, read it, and thereby became aware of the alleged conditions of which [Plaintiff] complained," *see Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013); *see also Zahaf v. New York Dep't of Corr. & Cmty. Supervision*, No. 22-CV-291, 2024 WL 4362313, at *7 (W.D.N.Y. Sept. 30, 2024) (rejecting a defendant's argument that he was not personally involved in the alleged violation where he "merely received" a letter from plaintiff alerting him to the violation (citing *Grullon*, 720 F.3d at 140–41).

Finally, Defendants argue that Krom cannot be held liable because he was a non-medical officer who "lacked the medical training and authority to supersede the medical staff's

16

decisions." (*See* Defs' Mem. 12–13.)  However, that Krom's alleged role is administrative rather than medical does not "alter the relevant analysis, because 'the same standards apply to a claim of deliberate indifference to serious medical needs on the part of nonmedical prison personnel.'" *Labossiere v. Baxter*, No. 21-CV-10538, 2025 WL 887623, at *5 (S.D.N.Y. Mar. 21, 2025) (alteration adopted) (quoting *Dumel v. Westchester County*, No. 19-CV-2161, 2021 WL 738365, at *10 (S.D.N.Y. Feb. 25, 2021)); *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017) ("The same standards apply to a claim of deliberate indifference . . . on the part of nonmedical prison personnel." (quoting *Hodge v. Coughlin*, No. 92-CV-622, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995)).  Indeed, "[n]on-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical treatment once it was prescribed." *Doane v. C.O. Doe, et al.*, No. 25-CV-516, 2025 WL 2612829, at *5 (N.D.N.Y. June 27, 2025) (citing *Banks v. No. 8932 Corr. Officer*, 2013 WL 673883, at *4 (S.D.N.Y. Feb. 25, 2013)); *see also Crandell v. Ross*, No. 19-CV-6552, 2020 WL 134576, at *4 (W.D.N.Y. Jan. 13, 2020) (same).  Here, the crux of Plaintiff's allegations against Krom is that Krom was "made aware of [Plaintiff's] serious medical need" but still "allowed the delay in care to proceed," (Compl. ¶ 10)—in other words, that Krom "intentionally delayed access to medical care when [Plaintiff] was in extreme pain and ha[d] made his medical problem known to the attendant prison personnel,'" *Meggison v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 20-CV-0436, 2020 WL 13801098, at *3 (N.D.N.Y. May 21, 2020) (quoting *Hodge*, 1994 WL 519902, at *11)).  That is sufficient, at this stage, to allege a plausible deliberate indifference claim against Krom.  *See Nickelson v. Fischer*, No. 15-CV-00227, 2016 WL 1128181, at *9 (N.D.N.Y. Feb. 16, 2016) ("Plaintiff has made a

17

plausible showing of deliberate indifference to his serious medical needs by various [non-medical] officials who have been involved in the denial of Plaintiff's physician recommended transfer to a flats facility." (footnote omitted)), *report and recommendation adopted*, No. 15-CV-0227, 2016 WL 1122077 (N.D.N.Y. Mar. 22, 2016); *see also Bailey*, 2013 WL 2896990, at *4 (denying motion to dismiss where the plaintiff alleged the non-medical defendants "had firsthand knowledge of [p]laintiff's medical condition and need for alternative footwear, but ignored it" and noting that "[s]imply because they are not physicians does not mean that [the defendants] are not responsible for ensuring that prisoners receive proper [medical care] or may ignore a doctor's orders").[3]

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss insofar as Plaintiff's deliberate indifference claim is asserted against Defendants in their official capacities and denies Defendants' Motion to Dismiss insofar as the claim is asserted against Defendants in their individual capacities.[4]

The Court will hold a telephonic conference on October 27, 2025 at 10:30 AM.

---

[3] Defendants also argue that they are entitled to qualified immunity on this claim. (*See* Defs' Mem. 14–16.) However, because Defendants "make no actual arguments about why they are entitled to qualified immunity" but instead only "cite generic caselaw," the Court will not consider this argument at this time. *Whitley v. Ort*, No. 17-CV-3652, 2018 WL 4684144, at *10 (S.D.N.Y. Sept. 28, 2018) (quoting *Whitley v. Bowden*, No. 17-CV-3564, 2018 WL 2170313, at *12 (S.D.N.Y. May 10, 2018)); *Vega v. Rell*, No. 09-CV-737, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) ("Absent the defendants' specific legal analysis of the claims and supporting allegations, the court cannot consider the defendants' qualified immunity arguments at this time.").

[4] To the extent the Complaint may be construed as alleging state law claims such as medical malpractice or negligence, (*see* Compl. ¶ 3), those claims survive as Defendants do not address them in their Motion, (*see generally* Defs' Mem.).

For the reasons set forth above, the Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 21), and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: September 24, 2025
       White Plains, New York

_____
KENNETH M. KARAS
United States District Judge